[No. 9292.    Department One. — December 22, 1885.]

W. W. WATERMAN ET AL., APPELLANTS, v. E. B. MORRELL ET AL., RESPONDENTS.

CONTRACT FOR MANUFACTURE OF LUMBER — CONSTRUCTION OF. — The contract on which the action was brought, after providing for the manufacture by the defendants of certain timber into lumber, gave the plaintiffs a right to buy, at a stipulated price, any part or the whole of the refuse lumber that might accumulate during the process of manufacturing. *Held*, that the plaintiffs were authorized to take any part or the whole of the refuse, but could not cull and pick it over for the best pieces.

ID. — EVIDENCE — PERFORMANCE. — On a construction of the contract, and review of the evidence, *held*, that the defendants had performed all the conditions on their part.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Goldsby & Jeter*, and *Bart Burke*, for Appellants.

*S. O. Houghton*, for Respondents.

BELCHER, C. C.—This is an appeal from a judgment of nonsuit, and an order denying a motion for a new trial.

The action is based upon a written contract, executed September 23, 1881, by which the plaintiffs leased to the defendants certain timber land in the county of Santa Cruz, for the term of three years, and the defendants undertook to cut and manufacture into lumber all the redwood and fir trees standing on the land suitable for milling purposes.

It was provided in the contract that on or before the fifth day of each month, the defendants should render to the plaintiffs "a full written account of all merchantable lumber shipped each day during the preceding month, and must, within ten days after such account has been rendered, pay or cause to be paid to said Waterman and Waterman, for each one thousand feet of merchantable lumber, the sum of $2.50 in gold coin."

It was further provided that in case the defendants "should not manufacture the timber trees standing" on the land leased in the year 1881, then they should on the first day of January, 1882, pay to the plaintiffs "the sum of $2.50 per thousand feet on one third of all merchantable timber cut and shipped by them from their mill" on another tract.

It was further provided that plaintiffs should have the right to any part or the whole of the refuse lumber that might accumulate by manufacturing said timber into lumber, for the price of $7.50 per thousand feet, the

money to be credited by the plaintiffs to the defendants on the account for stumpage.

It is alleged in the complaint that the defendants had manufactured from trees cut on the demised premises, and had shipped, four hundred and fifty thousand feet of merchantable lumber, for which the defendants became indebted to the plaintiffs in the sum of $1,125, and that no part of that sum had been paid; that the defendants had failed to render any account to the plaintiffs of the lumber manufactured and shipped by them as required by the contract, and had failed and refused to let the plaintiffs have or take at their election "any part or all of the refuse lumber," upon the terms and at the prices named in the contract.

The prayer is for judgment for the $1,125, and for $1,000 damages.

From the evidence, it appears that the defendants cut no timber and manufactured no lumber on the plaintiffs' land in the year 1881, but they manufactured at the mill on their other tract such a quantity that they were required, under the terms of the contract, to pay to the plaintiffs on the first day of January, 1882, the sum of $1,225.88. This sum they paid to the plaintiffs on the thirty-first day of December, 1881, and took from them a receipt reading as follows:—

"Received of Morrell and Spidell $1,225.88 on account of stumpage on a certain contract dated September 23, 1881. W. W. WATERMAN."

The defendants did not commence to manufacture lumber on the demised land until September 20, 1882, but during the balance of that month and the next month they manufactured and shipped therefrom 346,713 feet, for which the stumpage at $2.50 per thousand amounted to $866.77.

They made no report of the lumber shipped until the fourth day of November, when they rendered to the plaintiffs a full written account of all merchantable

lumber shipped each day during the preceding two months.

On the day the defendants commenced manufacturing lumber on the plaintiff's land,—September 20th,—the plaintiffs went to the defendants to talk about the refuse lumber. They said they wanted a considerable quantity of it, but were not then prepared to say how much. They claimed the right to select from the mass of refuse the best of it, and leave the balance to the defendants. The defendants objected to this, but offered to let the plaintiffs take all the refuse during an hour's run, a day's run, a week's run, or a month's run. Afterwards, on October 18th, the defendants sent to the plaintiffs a written notice that they could "take any part or the whole of the refuse lumber as it comes from the saw."

The plaintiffs made no demand for pay for the lumber shipped, and no further demand for refuse lumber, until the third day of November, 1882, when this action was commenced.

1. It is claimed for the appellants that the court erred in granting the nonsuit, for the reason that the defendants were required by the contract to manufacture the plaintiffs' trees into lumber during the year 1881, and that the $1,255.88 was paid as liquidated damages, or as a penalty for their failure to comply with this condition, and not upon account for the lumber to be thereafter manufactured and shipped.

Clearly this was not the understanding of the parties when the receipt for the money was given and received; and looking at the language of the contract and the circumstances attending the transaction, we fail to see anything to warrant the claim made.

The court below was right, we think, in holding that the money was paid upon account, and that nothing was, therefore, due the plaintiffs for lumber shipped when the action was commenced.

2. It is also claimed that the defendants failed to make

any report in October of the lumber shipped in September, and that the plaintiffs were damaged by this failure.

It appears that the defendants commenced to ship lumber, manufactured from the plaintiffs' trees, on the 21st of September, and that they made no report until November. This may have been a technical breach of the contract, but if so, it was one which could not in any way have injured the plaintiffs, as they had been paid in full for all the lumber shipped.

3. The only other point made is that the plaintiffs were denied the right to cull from the refuse the best parts of it, leaving all the poorer pieces for the defendants. It is said if the best pieces could have been selected out of the mass of refuse, they would have been worth ten dollars per thousand feet, and that as the plaintiffs were to pay only $7.50 per thousand, they clearly suffered damages by the denial, which should have been found and awarded to them.

Under the contract the plaintiffs were entitled to take "any part or the whole of the refuse lumber that may accumulate by manufacturing said timber into lumber." Do these words justify the claim of the plaintiffs? We think not. We agree with the court below that they refer to quantity and not quality, and that they authorized the plaintiffs to take the whole or any fractional part of the refuse, but required that it be taken as a whole, and not culled and picked over for the best pieces.

It follows that the judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are affirmed.