530-15    531-15

NO. 05-13-01138;
NO. 05-13-01139

IN THE TEXAS COURT OF
CRIMINAL APPEALS

ORIGINAL

====================

KENNETH PAUL LAWRENCE
PETITIONER

v.

THE STATE OF TEXAS
RESPONDENT

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 05 2015

Abel Acosta, Clerk

====================

In the Court of Appeals for the Fifth District of
Texas at Dallas
NO. 05-13-01138;
NO. 05-13-01139

FILED IN
COURT OF CRIMINAL APPEALS

MAY 06 2015

Abel Acosta, Clerk

====================

PETITION FOR
REVIEW

====================

*ProSe*

Kenneth Paul Lawrence
404 Lee St.
Wolfe City, TX 75496
Phone: 972-768-3361
kennylawrence@Yahoo.com

1

## IDENTITY OF THE PARTIES AND COUNSEL

**PETITIONER /APPELLANT**
Kenneth Paul Lawrence
404 Lee St.
Wolfe City, TX 75496
Phone: 972-768-3361
kennylawrence@Yahoo.com

**CRIMINALDISTRICT ATTORNEY**
Emily Johnson-Liu
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071

**STATE'S ATTORNEY AT TRIAL**
Dale R. Barron
Texas State Securities Board
1210 River Bend Drive, Suite 208
Dallas, TX 75247

**STATE'S ATTORNEY ON APPEAL**
Greg Willis (or designated representative)
Collin County District Attorney's Office
2100 Bloomdale Road
McKinney, Texas 75071

**PRESIDING JUDGE DISTRICT COURT**
Honorable Benjamin N. Smith, District Judge
380th Judicial District Court
2100 Bloomdale Road
McKinney, Texas 75071

# TABLE OF CONTENTS

PAGE NO.

IDENTITY OF PARTIES AND COUNSEL....................................2

INDEX OF AUTHORITES.....................................................5

STATEMENT OF THE CASE................................................8

ISSUES PRESENTED:

    Issue 1:   The Court's negligent ruling
    Issue2:    The exclusion of testimony

*Point of Error 1*

*The case is insufficient under Jackson v. Virginia where the evidence shows Appellant possibly had no involvement of the offense; that Appellant issued strongly worded admonishments to be disseminated to investors; that accomplice witnesses distorted, perverted, and mutilated selling points provided by Appellant to defraud down-stream investors; that victims had no knowledge of Appellant whatsoever at the time they invested; that Appellant did not know and had no way to know down-stream investors had been defrauded; and that accomplice witness boilerplate confessions failed to implicate Appellant and the accomplice witnesses generally denied the existence of illegal activity altogether on cross-examination essentially retracting their boilerplate confession. No rational juror could find Appellant Guilty beyond a reasonable doubt.*
.................................................................................8

*Point of Error 2*

*The case is insufficient due to the accomplice witness testimony rule because none of the seven non-accomplice witnesses could remotely inculpate the Appellant much less offer proof, which taken rationally, could have tended to connect him to a criminal offense. Additionally, Tex.Pen.C. 31.03(c)(2) which allowed the State to survive directed verdict on the theft case does not alleviate the State's burden to prove knowledge and intent to enter into a criminal combination as required for engaging*

*in organized criminal activity*.............................8

*Point of Error 3*

*The State called a supervising prosecutor from the same office as trial counsel to solicit expert testimony against Defendant thus utilizing his office to gain testimonial credit before the jury; confusing the jury as to the role of the office in the prosecution; blurring the line between advocate and witness; and undermining the public confidence in the justice system. The failure of the prosecuting entity and/or trial court to strike the witness or recuse the prosecutors participating in the trial was structural error requiring reversal*.............................9

*Point of Error 4*

*Defendant not being personally present at a video deposition violated his Sixth Amendment right to confront said witness*.............................9

STATEMENT OF FACTS.............................9

SUMMARY OF ARGUMENT.............................20

ARGUMENT.............................23

**Point of Error 1, Restated**.............................23

**Point of Error 2, Restated**.............................27

**Point of Error 3, Restated**.............................34

**Point of Error 4, Restated**.............................42

PRAYER.............................48

CERTIFICATE OF SERVICE.............................49

# INDEX OF AUTHORITIES

## CASES

*Doe v. Roe*,
    333 S.W.4d 111 (Tex. App.—Dallas, 2010, pet. denied) .........4

*Johnson v. Thompson*,
    444 S.W.4d 222 (Tex. App.—Texarkana, 2012, pet. denied) ...4

*Litigant v. Defendant*,
    999 S.W.3d 111, 116 (Tex. App. – Austin 2011, pet. filed) ...3

*Plaintiff v. Amicus*,
    111 S.W.4d 333 (Tex. App.—Austin, 2010, pet. denied) .........5

*Smith v. Jones*,
    888 S.W.3d 222 (Tex. 2012) ...............9

## Statutes and other authorities

Tex. Civ. Prac. & Rem. Code Ann. § 38.001 .................9

Tex. Gov't Code Ann § 22.001(a)(6) ...........5, 7

Tex. Prop. Code Ann. § 101.11 .................11

Tex. R. App. P. 53 .................11

*Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)................23

*Jackson v. Virginia*, 443 U.S. 307 (1979)................8, 20, 23

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)................24

*Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)................24

*Hooper v. State* 214 S.W. 3d 9, 16-17 (Tex. Crim. App. 2007) ................24

*Badillo v. State*, 963 S.W.2d 854, 857 (Tex. App.—San Antonio 1998)........28

*Morin v. State*, 960 S.W.2d 132, 136 (Tex. App.—Corpus Christi 1997)......28

*Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1994).................28

*House v. State*, 947 S.W.2d 251, 254 (Tex. Crim. App. 1997 En Banc)...35, 36, 37

*In Re: Guidry*, 316 S.W.2d 729 (Tex. App. — Houston [14th Dist.])...........35

*Anderson Producing, Inc. v. Koch Oil Co.*, 929 S.W.2d 416 (Tex. 1996)...35, 38

*Brown v. State*, 921 S.W.2nd 227 (Tex. Crim. App. 1996)..............36, 37, 40

*Powers v. State*, 165 S.W.3d 357 (Tex. Crim. App. 2005)...................36, 37

*Digges v. State*, 2012 WL2444543 (Tex. App. — Dallas 2012) ................36

*United States v. Trapnell*, 638 F.2d 1016, 1025 (7th Cir. 1980)...............36

*United States v. Birdman*, 602 F.2d 547, 552-53 (3rd Cir. 1979) ..............36

*United States v. Torres*, 503 F.2d 1120, 1126 (2nd Cir. 1974).................36

*Robinson v. United States*, 32 F.2d 505, 510 (8th Cir. 1928)..................36

*United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982).................37

*Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008).................38

*Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)............................38

*Davila v. United States*, 133 S. Ct. 2139, 2149 (2013)......................38, 41

*Ayers v. Canales*, 790 S.W.2d 554 (Tex. 1990).............................38, 39

*In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004).............................39, 42

*Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).............................42

*Illinois v. Allen*, 397 U.S. 337, 338 (1970)................................43

*Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008)..........................43

*Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005).................45

**RULES**

TEX. R. APP. P. § 44.2(a) ........................................................9, 23, 48

TEX. PEN. C. 31.03(c)(2)........................................................3, 20, 21, 28

TEX. PEN. C. 71.02(a)(1)........................................................24, 26

TEX. CRIM. PROC. CODE ANN. § 38.14........................................27

TEX. DISCIPLINARY RULES PROF'L CONDUCT 3.08........................34, 35, 39, 41

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08 cmt. 4....................35

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(c)......................34, 38

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a)....................39, 42

## STATEMENT OF THE CASE

Appellant was indicted for four separate charges; Theft of over $200,000 for which he was ultimately acquitted; Securities fraud for which he was ultimately acquitted; Engaging in organized criminal activity with the predicate offense being theft over $200,000 for which he was ultimately convicted and given 10 years confinement suspended for 10 years of community supervision (380-80745-2011 CR P. 17) (380-80745-2011 CR P. 202 – 210); and money laundering over $200,000 of the proceeds of theft of over $200,000 for which he was convicted and sentenced to 5 years in the Texas Department of Corrections (380-80746-2011 CR P. 17) (380-80746-2011 CR P. 196 – 198).

## Issues on Appeal

### I.

The Conviction for Engaging in Organized Criminal Activity with the predicate offense of Theft over $200,000 is predicated on insufficient evidence in light of *Jackson v. Virginia* as no rational juror could have found Appellant Guilty beyond a reasonable doubt based on the evidence presented at trial.

### II.

The accomplice witness rule prohibits conviction because there was only accomplice-witness evidence that tended to connect Appellant to any crime.

# III.

**The supervising prosecutor's testimony as an expert witness constituted structural error requiring reversal.**

# IV.

**Appellant was deprived of his Sixth Amendment Rights because he was not present at the depositions of multiple witnesses taken in the case. These depositions were later published to the jury as the witness' sole testimony. This constitutional error contributed to the conviction, and therefore this Court must reverse pursuant to TEX. R. APP. P. 44.2(a)**

## *STATEMENT OF FACTS*

Kenneth Lawrence ("Appellant"), by and through his company, Green Diesel (III P. 78 Ln. 13 – P. 79 Ln. 15) formed a relationship to build and operate a bio-diesel plant in Hunt County, Texas (III P. 56 Ln. 2 – 15) with Greenway Energy Partners, LLC, a company consisting of Casey Vanloon, Ricky Ray Knowles, John David Riddle, and Ronnie Nichols, (III P. 26, Ln. 5 – 15) (III P. 30 Ln. 5 – 23); (III P. 55 Ln. 3 – 18). The project was to be done through SUNX (pronounced Sun-ex), an international corporation selling franchises in Bio-Diesel plants (III P. 27 Ln. 17 – 21) (III P. 52 Ln. 5 – 8) (IV P. 126 Ln. 18 – P. 127, Ln. 3). Appellant and Greenway were trying to raise money from investors (III P. 38, Ln. 3 – 13). Appellant and

9

his uncle, Robert Lawrence, actually visited SUNX in British Columbia, Canada, to verify the legitimacy and viability of their plan to built a biodiesel plant (V P. 11 Ln. 6 – P. 13 Ln. 20).

SUNX Investors, such as Appellant, thought they were buying a franchise they could operate themselves, but mid-way through the project SUNX gave investors the option of being converted to shareholders in a plant (or plants) operated by SUNX, or to have their investment returned altogether. (IV P. 129 Ln. 8 – P. 131 Ln. 18). SUNX eventually went bankrupt and/or quit honoring their commitments. Appellant and Dan Anglin, an investor and defense witness who traveled from Ohio to testify, were sent scrambling by SUNX unforeseen failure (IV P. 9 Ln. 14 – 17) (IV P. 139 Ln. 4 – P. 142 Ln. 6).

The State called Ricky Ray Knowles, Casey Vanloon, and John Riddles to testify against Appellant. It is uncontested these are accomplice witnesses and the Court charged the jury they were as such (380-80745-2011 CR P. 185 – 194). Each accomplice-witness had previously signed a boilerplate voluntary confession and plea agreement ("VCPA") and those were admitted into evidence (State's Exhibits 1, 11 and 29). **The VCPAs all failed to implicate Appellant and do not mention him in the confession portions.** Each accomplice-witness testified the project was Appellant's

idea and that Appellant provided them with at least some of the information to give the potential investors (III P. 27 Ln. 6 – P. 29 Ln. 9) (III P. 37 Ln. 4 – 6) (III P. 79 Ln. 23 – P. 80 Ln. 7) (III P. 159 Ln. 5 – 21). The most significant item provided by Appellant was a voluminous prospectus (State's Exhibit 12) (III, P. 37 Ln. 4-10).

Within the prospectus was the following language at the outset of approximately three pages of bold-highlighted admonitions, cautions and warnings:

> **"PARTICIPATION AS A JOINT VENTURER HEREIN INVOLVES A HIGH DEGREE OF RISK AND ONLY THOSE PERSONS WHO ARE ABLE TO BEAR THE FINANCIAL RISKS REFERRED TO IN THIS MEMORANDUM SHOULD CONSIDER PARTICIPATING IN THIS VENTURE."**

(State's Exhibit 12).

The State proved some of Greenway's investors had clearly been defrauded in Greenway's efforts to raise operating capital. The main culprit in the fraud was Ronnie Nichols (III P. 173 Ln. 16 – 20). Mr. Nichols did not testify in this trial and was ultimately sentenced to 8 years TDC. (III P. 162 Ln. 23 – P. 163 Ln. 11). The State will not be able demonstrate any evidence in the record that Appellant directly defrauded any investor. During punishment it was revealed the State attempted to contact investors

directly solicited by Appellant. Instead of the State's prosecution the investors informed Appellant they had been contacted (VII P. 175 Ln. 3 – 25). No investor who testified in this case and was defrauded had directly met with or spoken with Appellant at the time they were originally defrauded.

On cross-examination, each accomplice witness denied wrong doing to varying degrees, and each denied there was any scheme to defraud investors. They essentially retracted their original boilerplate confessions (III P. 53 Ln. 15 – P. 54 Ln. 6 [Knowles Repudiation]) (III P. 116 Ln. 14 – P. 117 Ln. 17 [Riddle Repudiation]) (III P. 163 Ln. 18 – P. 164 Ln. 20 [Vanloon]). There was nothing on the checks which would have aroused Appellant's suspicion the money had been raised fraudulently when the money was ultimately sent to him and not even John Riddle knew the money to have been raised fraudulently (III P. 141 Ln. 11 – 17). Appellant had no control over Greenway accounts (III P. 55 Ln. 16-18).

Though accomplice-witnesses testified the information they used to defraud investors was from Appellant, their tactics in no way resembled anything Appellant could have contemplated. An investor defrauded by Mr. Nichols claimed they didn't even know they were buying in to a biodiesel plant (III P. 196 Ln. 21 – P. 197 Ln. 6) (III P. 185 Ln. 1 – P. 187 Ln. 16).

12

Accomplice-witness Casey Vanloon told another investor that he was an attorney (IV P. 198 Ln. 9 – 17). The state will not be able to demonstrate in the record Appellant was made aware of or sanctioned any of these tactics or shenanigans used by accomplice witnesses or by Mr. Nichols.

## Non-Accomplice Witnesses

### *Eliza Lujan:*

The State called an expert accounting witness, Eliza Lujan, to testify as to how money controlled by Appellant was being spent (IV P. 5 Ln. 9). Ms. Lujan testified Appellant had transferred $40,000 to SUNX (IV P. 9 Ln. 14 – 17) (See generally III P. 239 Ln. 7 – IV P. 33 Ln. 2). Ms. Lujan made speculative comments to the jury. For instance, Ms. Lujan initially guessed money was paid to Hunter Lawrence which she believed to be the child of Appellant. On cross-examination the jury learned Hunter Lawrence may actually have been a cousin. (IV P. 8 Ln. 25 – P. 9 Ln. 2) (IV P. 23 Ln. 23 – P. 24 Ln. 1).

### *James Willis (Video):*

James Willis was the only investor who ever spoke with Appellant but did so well after Mr. Nichols defrauded him to see about recouping his

money (III P. 215 Ln. 3 – P. 216 Ln. 6) (State's Exhibit 32-2 published to jury at III P. 238 Ln. 15 [not transcribed by the court reporter]). Appellant clearly expressed continuing support of the project but he also made a very clear assertion that, "there's no guarantee of anything" (approx. 18:21 into the recording by Appellant's attorney's estimation). At one point Mr. Willis said to Appellant, [Mr. Nichols] "…did not explain to me like you are telling me this… had he done that… had he told me what he was doing I never would have done this" (approx. 21:45 into the recording by Appellant's attorney estimation). Ultimately Appellant told Mr. Willis to try to get his money back from Greenway. Again, Appellant would not have known if he had Mr. Willis' money because he was not aware of Greenway investors when money was forwarded to him (III P. 141 Ln. 11 – 17). Appellant was not present for his video-deposition, which was ultimately played for the jury (III P. 182 Ln. 5 – P. 183 Ln. 20).

### *Thomas Petersik:*

In it's opening statement, the state told the jury that the co-defendants misrepresented the existence of an insurance policy to investors (through the "Fireman's Fund") which would indemnify them from a potential loss by telling the jury "there was no insurance policy" (III P. 9 Ln. 2 – Ln. 22). Mr.

14

Petersik is a representative from the "Fireman's Fund" who traveled from Chicago, Illinois. (IV P. 33 Ln. 22 – P. 34 Ln. 1) (IV P. 35 Ln. 12 – P. 36 Ln. 1). The State called Mr. Petersik to testify there was no insurance policy in place by Green Diesel, Greenway, or SUNX. On cross-examination the witness testified: (1) he never contacted SUNX (presumably to see if a policy had been planned but was not current because the planned plant(s) had not been built yet) (IV P. 40 Ln. 2 – 3); (2) a valid business interruptions policy would in fact indemnify qualified losses from an *existing* plant given the proper circumstances (IV P. 43 Ln. 11 – 24); and that (3) the SUNX prospectus containing a letter with the "Fireman Fund's" logo did not appear to make fraudulent representations (IV. P. 45 Ln. 1 –P. 46 Ln. 4 discussing Defense Exhibit 1).

*Todd Crosby:*

This witness is Appellant's brother-in-law who had been sued along with the Appellant by a former investor of an oil and gas project (IV. P. 65 Ln. 15 – P. 68 Ln. 16). Mr. Crosby admitted they had employed an attorney by the name of Phil Aufill to draft the joint venture agreement which ultimately got them sued by their former investor– and that Mr. Aufill was in federal custody (IV P. 71 Ln. 4 – P. 72 Ln. 2) (IV P. 77 Ln. 19 – P. 78 Ln.

11). Mr. Crosby testified he had been sued for theft by L&C Consultants (Appellant's previous company) but claimed he was innocent (P. 70 Ln. 9 – P. 71 Ln. 1).

### Richard Waskom:

The State called Richard Waskom, a person successfully sued by Appellant by and through L&C Consultants for $150,000 (IV P. 106 Ln. 12 – P. 107 Ln. 5). Mr. Waskom generally testified he was privy to the lawsuit against Appellant as well as Mr. Crosby and the underlying facts of the lawsuit that involved an oil and gas project (IV P. 81, Ln. 6 – P. 100 Ln. 24).

### Garland Downing:

Mr. Downing was a 79 year-old investor solicited by Casey Vanloon. Mr. Downing never heard the name of Appellant in connection with the investment (IV. P. 51 Ln. 9 – 11).

### Herman Peace (Video)

This witness was an investor solicited by Ronnie Nichols. He was not positive he had heard Appellant's name at or near the time he invested (IV P. 167 Ln. 1 – P. 169 Ln. 12). The record is silent whether Appellant was present for this deposition.

### Billie Nevill (Video)

Billie Nevill testified she was an investor who was solicited by Mr. Casey Vanloon. Ms. Nevill was not asked any questions on direct examination about Appellant (IV P. 184 Ln. 20 – P. 203 Ln. 14). Ms. Nevill testified initially she was not sure what she was investing in but later recalled what it was in more general terms (IV P. 193 Ln. 8 – 17). The record is silent as to whether Defendant was in attendance.

### Alma Sparks (Video):

Ms. Sparks was an investor solicited by Casey Vanloon. Ms. Sparks testified she did not know who Appellant was at the time of her investment (IV P. 226 Ln. 18 – P. 228, Ln. 11). Appellant was not present for her deposition. (IV P. 208 Ln. 8 – P. 209 Ln. 8).

### Joseph P. Oman – The Prosecutor-Witness

The State further relied on the expert testimony of Joseph P. Oman, an attorney who is the assistant director of the enforcement division and the supervisor for the Dallas Branch office of the Texas State Securities Board. This is the same agency that employs trial counsel for the State though trial

counsel was working in the capacity as a special prosecutor on the case as appointed by the sitting District attorney of Collin County (II P. 2 Ln. 3 – 11)(IV P. 237 Ln. 14 – P. 238 Ln. 22) (II P. 24 Ln. 16 – P. 25 Ln. 2). Mr. Oman has testified previously in similar capacities (IV P. 239 Ln. 19 – P. 240 Ln. 6).

Mr. Oman gave basic legal opinions about concepts including investment contracts, evidence of indebtedness, and blue sky laws. (IV P. 240 Ln. 10 – P. 243 Ln. 1). He described offices full of unregistered agents as "boiler rooms" (IV P. 245 Ln. 18 – 25). He resolved several hypotheticals including; (1) that a purported joint venture similar to Appellant's joint venture would not allow individuals in the venture to exercise any control (IV P. 253 Ln. 3 – P. 254 Ln. 7); and (2) that a promoter would have a duty make sure sales-persons disclose material facts about himself to the ultimate investors (IV P. 254 Ln. 8 – P. 255 Ln. 1). Mr. Oman testified the terms in the prospectus do not really apply to a biodiesel offering but is more similar to oil and gas. (IV P. 255 Ln. 2 – 23). Mr. Oman testified in his experience oil and gas companies attempt to sell projects as true joint ventures in an effort to evade Texas and Federal securities laws because they do not want the oversight due to a history with regulatory agencies. (IV P. 256 Ln. 14 – P. 267 Ln. 4).

The State relied on Mr. Oman's testimony in arguing against directed verdict (V P. 53 Ln. 2 – 7). The state referenced Mr. Oman's testimony in closing argument and spoke in detail about some of the concepts he raised during his testimony though they did not attribute it to him. In the State's initial closing argument, reference was made to the fact others were not aware of Appellant's history with the Texas State Securities Board (V P. 64 Ln. 9 – P. 65 Ln. 7); the State argued Appellant was guilty of Engaging in Organized Criminal Activity due to his failure to correct false impressions about his past (V P. 68 Ln. 3 – P. 69 Ln. 4). In the State's final summation, the lawyer for the State made a direct reference to Mr. Oman and his discussion of the oil and gas language in the prospectus linking the fact Appellant was previously in the oil and gas industry (V P. 92 Ln. 1 – 14). In the final moments of jury argument, the State discussed Appellant's failure to disclose to others his regulatory history which touched on a point Mr. Oman made in his testimony (V P. 95 Ln. 14 – P. 96 Ln. 3).

**Other Non-Accomplice Evidence**

The State showed Appellant had been sued and had a judgment for over $500,000 against him (III P. 158 Ln. 16 – 18); that Appellant had

unsuccessfully attempted lawful discharge of his debts through Bankruptcy proceedings (III P. 35, Ln. 6-17), (State's Exhibit 10), and that Appellant had a cease and desist letter from the Texas State Securities Board on a previous matter (State's Exhibit 8). This evidence was advanced pursuant to the State's theory that Appellant failed to disclose material information to investors.

## Charge Conference

During the jury charge conference the State relied upon TEX.PEN.C. 31.03(c)(2) arguing the testimony of an accomplice witness is sufficient to prove knowledge and intent as it applies to theft. The State generally referred to facts they thought were proven but cited no sources of evidence – and thus no sources of evidence independent from accomplice witness testimony connecting Appellant to the offense. (IV P. 277 Ln. 21 – P. 280 Ln. 19).

## SUMMARY OF THE ARGUMENT

I.   **The Evidence Is Insufficient under *Jackson v. Virginia* to Convict Appellant of Engaging in Organized Criminal Activity; to wit, theft over $200,000.**

Based on the elements of the offense as defined by statute and the indictment, the State was required to prove Appellant intentionally or

20

knowingly established, maintained, or participated in a combination or in the profits of a combination, by intentionally or knowingly committing the offense of theft, and the property obtained by the theft was obtained pursuant to one scheme and continuing course of conduct, and had an aggregate value of $200,000 or more. After viewing the evidence in the light most favorable to the verdict, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury unfairly or irrationally inferred Appellant's guilt based on the facts presented.

## II.    The Non-Accomplice Witness Evidence Fails to Connect Appellant to the Offense Charged

The only evidence of Appellant's guilt, if any, was based on testimony of accomplice witnesses. No evidence from non-accomplices tended to link or connect Appellant to the charges in this case. The State relied on Tex.Pen.C. 31.03(c)(2) to survive directed verdict as to the knowledge and intent elements of theft, however, a conviction for engaging in organized criminal activity with theft as the predicate offense requires a separate showing of knowledge or intent to establish, maintain, or participate in a combination or in the profits of a combination. Because the only evidence establishing intent and knowledge to enter the combination, if any,

21

was from accomplice witness testimony, the facts are legally and factually insufficient.

## III. The State's Solicitation of the Prosecutor's Supervisor's Testimony as an Expert Witness Marred the Proceedings and resulted in Structural Error Requiring Reversal

The State called Joseph P. Oman, an attorney licensed to practice law for 31 years as an expert witness. Mr. Oman stated his employment was with the Texas State Securities Board in Dallas – the same office for trial counsel for the State. Prosecutors have enhanced credibility, which is why they should be mindful of testifying in cases they prosecute. Were this not enough, an expert witness also has enhanced credibility above and beyond normal fact or lay witnesses. Mr. Oman's testimony resolved hypotheticals against Appellant, and also testified Appellant's modus operandi comported with person who engage in similar types of fraud. Mr. Oman's presence as a expert witness and his testimony severely damaged and affected Appellant's rights. Mr. Oman should have been struck as a witness or in the alternative the trial counsel should have been recused. In either event the error is structural because it impacted the framework of the proceedings.

## IV. The Trial Court Erred in Allowing Deposition Testimony Into the Record where Appellant was Not Present During the Witness Testimony

Appellant was not present at the video deposition of James Willis or Alma Sparks. The record is silent whether Appellant was present for the depositions of Dr. Herman Peace and/or Billie Neville. These witnesses did not appear live but instead through video depositions offered in lieu of live testimony. The Sixth Amendment to the U.S. Constitution allows an accused to be present for his ability to consult with counsel about questioning of a witness and so the witness is aware of the presence of the accused. Because Appellant was not present for their testimony and cross-examination, his 6th Amendment Rights were violated. This was harmful error pursuant to TEX. R. APP. P. 44.2(a).

## ARGUMENT

### I.
### The Evidence is Insufficient Under *Jackson v. Virginia* to Sustain a Conviction for Engaging in Organized Criminal Activity

When an Appellant argues the evidence is legally insufficient to support his conviction, the reviewing court must consider all the evidence in the light most favorable to the verdict and "determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson*

*v. Virginia*, 443 U.S. 307 (1979). A reviewing court cannot "re-evaluate the weight and credibility of the record evidence" and "substitute [its] judgment for that of the fact-finder." *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

The elements for engaging in organized criminal activity as charged here are that Appellant intentionally or knowingly established, maintained, or participated in a combination or in the profits of a combination by intentionally or knowingly committing the offense of theft, and the property obtained by the theft was obtained pursuant to one scheme and continuing course of conduct and had an aggregate value of $200,000 or more. TEX.PEN.C. 71.02(a)(1).

In analyzing sufficiency, the Court is to "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of *all* the evidence when viewed in the light most favorable to the verdict." *Hooper v. State* 214 S.W. 3d 9, 16-17 (Tex.Crim.App. 2007) (emphasis added). Thus it can be inferred sufficiency is not merely the viewing evidence of guilt in a vacuum, but reviewing the totality of the record.

TEX.PEN.C. 2.01 is often over-looked but it clearly holds "all persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." This provision clearly applies to jurors. While this court is bound to consider the evidence in the light most favorable to the guilty verdict – it must do so considering a rational juror is under the duty to presume the accused innocent when resolving evidence in a case. Indeed, very few successful embezzlement combinations occur where a principal gives an agent a prospectus for investors containing page after page of bold-capitalized disclaimers and admonitions about how investors can lose all their money.

Only one rational inference can be made where accomplice witnesses deny a combination took place, where the voluntary confessions fail to inculpate Appellant, and where at least one accomplice states Appellant was not made aware of the fraudulent nature of the acquisition of funds at the time they were paid: *that Appellant did not enter into a combination for the purposes of committing theft.*

The State would likely argue accomplice-witnesses established the guilt of Appellant standing alone. Again, none of VCPAs, however, directly

inculpate Appellant. Additionally, each denied, to varying degrees, any wrongdoing that would be necessary to establish a combination in violation TEX.PEN.C. 71.02(a)(1). The only fact established by their cumulative testimony is that Appellant was the person who gave them materials and information they could use to solicit investors and that he was in charge of the main deal with SUNX. The defrauded investors, however, were given completely mutilated versions of Appellant's original information if they were told about a biodiesel plant at all.

Mr. Vanloon told investors he was an attorney (IV P. 198 Ln. 9 –17).

Mr. Nichols tricked at least one investor who didn't even know he was investing in a biodiesel plant (III P. 196 Ln. 21 – P. 197 Ln. 6).

Mr. Nichols asked investors to roll over annuities and other investments into their venture (III P. 185 Ln. 1 – P. 187 Ln. 16).

The State can point to no evidence Appellant took part, sanctioned, or even knew of this out-right fraud. If anything, the criminal actions of Mr. Nichols and Mr. Vanloon were unforeseeable. When their outrageous shenanigans are juxtaposed with Appellant's innocent conduct such as issuing a prospectus with ominous disclaimers and later telling investors "there's no guarantee of anything," the only rational conclusion is Appellant

was not part of a combination with the bad actors.

Indeed, a juror presuming Appellant innocent could only rationally find where Appellant's materials had not been forwarded to the ultimate investor and where his project had been presented in such a twisted manner to the ultimate investor that he had no way of knowing about the fraud. In fact, the evidence showed as much when John Riddle testified Appellant did not know the means by which the funds were raised nor would he have any reason to suspect the means were foul (III P. 141 Ln. 11 – 17).

Therefore, because the evidence in this case when taken as a whole does not rationally or reasonably establish Appellant's guilt beyond a reasonable doubt, the evidence is insufficient.

## II.

### Even if the Evidence was Sufficient, it was Based on Accomplice Witness Testimony Alone and the Non-Accomplice Witness Testimony Fails to Connect Appellant to Any Crime

TEX.CODE.CRIM.P. 38.14 states that "a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the Appellant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the

offense." Therefore, in any case where accomplice testimony forms a part of the evidence, there must be sufficient corroboration of the testimony for a conviction to stand. There must be some corroboration other than the statements or testimony of other co-conspirators. *Badillo v. State*, 963 S.W.2d 854, 857 (Tex. App.—San Antonio 1998).

To determine if the accomplice testimony was corroborated, the fact-finder at the trial court level (and the appellate court at the present level) must "eliminate all accomplice evidence from the record and [then] determine whether the inculpatory facts and circumstances in evidence tend to connect the appellant to the offense." *Morin v. State*, 960 S.W.2d 132, 136 (Tex. App.—Corpus Christi 1997), citing *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1994).

TEX.PEN.C. 31.03(c)(2) provides a narrow exception to the accomplice witness testimony rule in theft offenses where accomplice witness testimony may be sufficient to establish the intent or knowledge elements alone. The exception does not apply to any other element such as identity or the appropriation of property. Furthermore, the exception does not alleviate the State of having to prove the separate mental state of

entering into a combination for engaging in an organized criminal activity statute.

Here, Appellant contends the State all but conceded during argument against directed verdict only accomplice witness testimony connects Appellant to the offenses in question (V P. 53 Ln. 2 – 7).

Indeed, the State's reasoning seemed to be if they multiplied enough zeroes, they would eventually generate positive numbers in connecting Appellant to the offense. The State called seven non-accomplice witnesses and had 47 exhibits entered into evidence. It seemed as if the state's theory was, "where there is smoke, there is fire" but no evidence broke the barrier they needed.

### *James Willis:*

James Willis is the only witness who came close to linking Appellant with the conduct of the accomplice witnesses. Mr. Willis testified he had never met Appellant in person and that he was only aware of Appellant well after having his money stolen by Ronnie Nichols. Mr. Willis had a lengthy phone conversation with Appellant where Mr. Willis was not even able to authenticate Appellant's voice on the recording. The individual purporting

to be Appellant encouraged Mr. Willis to contact Greenway about getting a refund, continued to express optimism about the project encouraging Mr. Willis to keep his money invested and finally cautioning Mr. Willis that nothing was guaranteed to anyone. Mr. Willis even told Appellant that had Mr. Nichols explained the project to him the way he had, he never would have invested (Exhibit 32-2, approximately 18:21 and 21:45 into the recording as estimated by Appellant's attorney).

The phone call only confirms Mr. Willis had been defrauded and that Mr. Lawrence felt the project was still a worthwhile investment. Again, because Appellant had no way of knowing the fraudulent activity of Greenway at that point– he would naturally not take any other action with Mr. Willis than referring him back to the ones who had initially taken their money… which he ultimately appeared to do in on the call.

### Eliza Lujan

Expert accountant Eliza Lujan's testimony did not connect Appellant's conduct to the offenses committed with the Greenway accomplices or Ronnie Nichols. Ms. Lujan's testimony can be summarized as selecting questionable *sounding* expenditures without giving context and when pressed on whether the expenditure was legitimate – Ms. Lujan

retreated into her safe harbor that she was only testifying as a conduit of information and it was for the jury to decide the legitimacy of the expenditure. (E.g. V P. 18 Ln. 1 – P. 19 Ln. 8). Ms. Lujan's reckless guess that Hunter Lawrence could have been Appellant's child and was being paid in stolen proceeds from the elderly degrades the entire judicial process. A juror might not think twice about such testimony but it would rightfully incense someone who truly believed in their loved one's innocence and would only make them bitter after a conviction.

### *Thomas Petersik:*

It is clear the State's strategy in calling Mr. Petersik to testify was to show representations by Appellant about "The Fireman's Fund" insurance policy were a sham. Mr. Petersik had to communicate with Greenway to cease and desist representations they had been making (IV P. 36 Ln. 4 – P. 37, Ln. 18)(State's Exhibit 27).

Mr. Petersik's only testimony about Appellant or Green Diesel was that his research showed neither had a policy with "Fireman's Fund" (IV P. 35 Ln. 6 – P. 36 Ln. 1). Further, Mr. Petersik testified there was nothing fraudulent from what he could tell about representations about Fireman's Fund in the prospectus presented to him. Not only did Mr. Petersik's

testimony fail to connect Appellant with a criminal combination – it reinforced the obvious conclusion that Greenway had again perverted and distorted truthful information Appellant had given to them in the first place to lure victims.

### Garland Downing

Mr. Downing was an elderly investor who had been defrauded. Mr. Downing said nothing which would tend to connect Appellant with the offense (IV P. 51 Ln. 9 – 11).

### Todd Crosby

Mr. Crosby was called by the State to establish a past civil judgment against Appellant in support of the State's claim Appellant failed to disclose material information (IV P. 65 Ln. 15 – P. 68 Ln. 16). Mr. Crosby also testified he had been sued by Appellant and/or L&C Consultants for Theft at one point. Nothing in Mr. Crosby's testimony connected Appellant in any way to the fraud and theft committed by Greenway.

### Richard Waskom

Mr. Waskom testified he has a $150,000 judgment against him from Appellant and/or L&C Consultants that he has no intention of paying (IV P.

106 Ln. 12 – P. 107 Ln. 5). Mr. Waskom testified to establish Appellant had been previously sued and had a judgment taken against him and to the facts of that underlying lawsuit (IV P. 81 Ln. 6 – P. 100 Ln. 24). Mr. Waskom was not asked about the current charges against Appellant and thus did not provide any testimony connecting him to said offense.

### *Herman Peace:*

Dr. Peace was an elderly investor who had been defrauded. The State can point to nothing said by Dr. Peace that would tend to connect Appellant with the offense.

### *Billie Nevill:*

Ms. Nevill was an elderly investor who had been defrauded. The State can point to nothing said by Ms. Nevill that would tend to connect Appellant with the offense.

### *Alma Sparks*

Ms. Sparks was an elderly investor who had been defrauded. The State can point to nothing said by Ms. Sparks that would tend to connect Appellant with the offense.

*Joseph Oman*

Mr. Oman, the supervisor for trial counsel, generally testified about hypothetical concepts surrounding securities fraud and about general criminal conduct whereby people with regulatory history attempt to evade regulation (IV P. 256 Ln. 14 – P. 267 Ln. 4). Though Mr. Oman's testimony was hardly harmless – it did nothing to link Appellant to the offense other than those generalizations (E.g. IV P. 256 Ln. 14 – P. 257 Ln. 4). In the alternative, if Mr. Oman's testimony did tend to link Appellant to the offense, Appellant asserts Mr. Oman's comments be regarded as argument and not testimony.

Because there is no Non-Accomplice Witness evidence which tends to connect Appellant with the commission of Engaging in Organized Criminal Activity; to wit, Theft over $200,000, judgment in this case should be reversed and rendered.

## III.

### The State's Calling of the Prosecutor-Witness as an Expert Was Structural Error Requiring Reversal

Texas Rule of Professional Conduct 3.08 forbids lawyers from being witnesses in their own cases. Rule 3.08(c) imputes representation across the

firm of the attorney. Particular dangers posed when a prosecutor testifies against a criminal Appellant have been recognized in the past that (1) the prosecutor will not be a fully objective witness; (2) it is feared the prestige of a Government attorney's office will enhance the witness' credibility; (3) the prosecutor testifying might "create… confusion on the part of the jury as to whether he [is] speaking in his capacity of prosecutor or witness." Such confusion may result in the fact finder affording testimonial credit to the prosecutor's closing arguments; and (4) it reflects a broader concern for public confidence in the process of justice. *House v. State*, 947 S.W.2d 251, 254 (Tex.Crim.App., 1997 En Banc) (Baird Dissenting).

Rule 3.08 is grounded principally on the notion that the finder of fact may become confused when one person acts as both advocate and witness. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 4; *In Re: Guidry*, 316 S.W.2d 729 (Tex.App. – Houston [14[th] Dist.]). The rule reflects the concern that an opposing party may be handicapped in challenging the credibility of a testifying lawyer. *Anderson Producing, Inc. v. Koch Oil Co.*, 929 S.W.2d 416 (Tex. 1996).

Though Texas Courts have issued tough dicta against the practice – Texas Courts have consistently found reasons to uphold cases with incidents

of prosecutors testifying. *See House v. State*, 947 S.W.2d 251, 254 (Tex.Crim.App., 1997 En Banc), *Brown v. State*, 921 S.W.2d 227 (Tex.Cr.App. 1996), *Powers v. State*, 165 S.W.3d 357 (Tex.Crim.App. – 2005), and *Digges v. State* 2012 WL2444543 (Tex.App. – Dallas, 2012)(unpublished). These cases are informative but not instructive as they do not deal with the issue here – which is whether the tactic constitutes structural error.

In *House*, Justice Baird in his dissent notes other jurisdictions have dealt with this issue and have looked upon it with disfavor. E.g., *United States v. Trapnell*, 638 F.2d 1016, 1025 (7th Cir. 1980) (observing that appearance of prosecutor as witness is improper except in extraordinary circumstances); *United States v. Birdman,* 602 F.2d 547, 552-553 (3rd Cir. 1979) (noting courts and especially federal courts universally frown on practice of prosecutor testifying), cert. denied, 444 U.S. 1032 (1980); *United States v. Torres,* 503 F.2d 1120, 1126 (2nd Cir. 1974) (prosecutor should not be used as witness unless all other sources of testimony exhausted); *Robinson v. United States*, 32 F.2d 505, 510 (8th Cir. 1928) (practice of prosecutor acting as witness should be disapproved except in most extraordinary circumstances). Rarely should such testimony be permitted and, if the prosecutor testifies, he should then withdraw from any further

participation in front of the jury. E.g., *United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982).

Texas Courts have been reluctant to afford Appellants a windfall merely because their opponent may have committed a violation of the Texas Rules of Professional Conduct. The Court of Criminal Appeals has held, "The rules do not grant a Defendant standing or some 'systematic' right to complain about an opposing party's alleged disciplinary rule violations that do not result in actual prejudice to a Defendant... The rules should not be used as a tactical weapon to disqualify opposing counsel for their alleged disciplinary rule violations or to obtain a reversal of a conviction for alleged disciplinary rule violations by the opposing counsel unless the Appellant can show the alleged disciplinary rule violations by opposing counsel deprived him of a fair trial or otherwise affected his substantial rights." *See House*, at 253 *citing Brown at* 231 -232 (Tex.Cr.App. 1996). Again, the *House* and *Brown* cases do not resolve whether the error in the case is structural.

Further, in *Powers v. State*, 165 S.W.3d 357 (Tex.Crim.App. – 2005), the Court of Criminal Appeals adopted a "dual role" standard whereby as long as a prosecutor does not actively participate in the trial other than testifying, he is not serving in a "dual role" as lawyer an witness in the same

case. The Court's rationale, however, renders Rule 3.08(c) meaningless, which imputes representation to the entire office of the lawyer and ignores the fact the witness' credibility is enhanced merely by the office or title he or she holds.

"A 'structural' error 'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself,'" and is not amenable to a harm analysis. *Jordan v. State, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008)* (quoting *Arizona v. Fulminante, 499 U.S. 279, 310 (1991))*. All structural errors must be founded on a violation of a federal constitutional right, but not all violations of federal constitutional rights amount to structural errors. *See Davila v. United States*, 133 S. Ct. 2139, 2149, (2013). Under *Davila*, a structural error is a very limited class of error that triggers automatic reversal because they undermine the fairness of a criminal proceeding as a whole. Error of this kind includes denial of counsel of choice, denial of self-representation, denial of public trial and failure to convey to a jury that guilt must be proved beyond a reasonable doubt. *Id.*

The rule of conduct is also based the concern that an opposing party may be handicapped in challenging the credibility of a testifying attorney. *See Anderson Producing v. Koch Oil Co.* 929 S.W.2d at 416 citing *Ayers v.*

*Canales* 790 S.W.2d 554 (Tex. 1990). This rationale has obvious over-tones and implications with regard to the Sixth Amendment Right to Confront.

The fact that a lawyer simultaneously serves as both an advocate and a witness does not in itself compel disqualification. *In re Sanders, 153 S.W.3d 54, 57 (Tex. 2004).* Disqualification is only appropriate if the lawyer's testimony is "necessary to establish an essential fact." *Tex. Disciplinary R. Prof'l Conduct 3.08(a); see In re Sanders, 153 S.W.3d at 57.* The party requesting disqualification must demonstrate that the opposing lawyer's dual roles as lawyer and witness will cause the party actual prejudice. *See id.*

Though the Texas Rules of Professional Conduct Preamble para. 15 states the rules are not designed to be standards for procedural decisions; the trial court may disqualify an attorney in order to prevent a violation of Rule 3.08. *See Ayers*, 790 S.W.2d at 557.

Appellant concedes no objection was made at trial nor was any effort made by Appellant's trial counsel to strike Mr. Oman as a witness or recuse the State's trial counsel. Appellant contends the lack of objection, though, is immaterial if the error in the case is structural in nature.

Here, Appellant's rights were harmed in a manner that was one of the primary concerns of Rule 3.08. The State utilized the prestige of their office

in both the prosecution of Appellant and in submitting factual issues against Appellant. In doing so, the State posed a witness who it was virtually impossible to effectively cross-examine or discredit violating his Sixth Amendment Right to confront. In fact, Appellant here was even more so damaged than were the Appellants in *Brown* and *House* because here the State proffered a prosecutor from the same office as an *expert* witness (IV. P. 237 Ln. 12 – P. 240 Ln. 6). Further the State relied on the witness' testimony in arguing against directed verdict (V P. 53 Ln. 2 – 7) and repeatedly followed-up on themes and concepts from the witness during closing argument including their very last words to the jury before they retired to deliberate (E.g. V P. 64 Ln. 9 – P. 65 Ln. 7) (V P. 68 Ln. 3 – P. 69 Ln. 4) (V P. 92 Ln. 1 – 14) (V P. 95 Ln. 14 – P. 96 Ln. 3).

The error in allowing the State to call as an expert witness a prosecutor from their office is exponential. It marred the proceedings by misappropriating the prestige of their office to enhance the credibility of a witness. It created confusion on the part of the jury as to whether the witness was speaking in his capacity as prosecutor, as a neutral witness, or both. It afforded testimonial credit during closing argument to what the prosecutor argued from the stand. It reflected broader concern for public confidence in the process of justice. It finally impaired Appellant's ability to

40

effectively cross-examine the witness due to his enhanced credibility and prestige. The error in allowing such a witness to testify is of the type contemplated by *Davila* in that the fairness of the criminal proceeding as a whole has been undermined.

The State may argue in their own defense trial Counsel was a special prosecutor for Collin County and therefore wasn't under Mr. Oman's direct supervision for this particular prosecution. While this may technically be true it does little to erase the problems caused by the violation of Rule 3.08 and the notion this rule can be successfully evaded by switching bosses on a temporary basis would not be one jurors or the public would accept as reasonable. Further, without knowing how the Texas State Securities Board operates – whether they are special prosecutors in every case they prosecute in every county – allowing the entity to engage in this practice based on a minute distinction invites only more similar instances.

The State relied on the expert's testimony to survive directed verdict (albeit for one of the indictments that resulted in acquittal) that there was no requirement that the person committing the offense [of securities fraud] knows whether or not it is a security. The State's use of Mr. Oman's testimony was to develop facts essential to their theory of the case for

conviction.  Therefore, exclusion was appropriate.  TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a); *see In re Sanders,* 153 S.W.3d at 54, 57 (Tex 2004).

Further, the error is "structural" because it affected the framework from which the trial proceeded rather than just an error in the process. Indeed, the appropriate remedy in this case should have been to disqualify either the witness or the particular office prosecuting the case.  Either remedy, or failure to grant such remedy, would have substantially affected the framework of the trial.

Therefore, because the error in this case in allowing the State to call as an expert witness a lawyer from their own office is structural in nature – reversal is required.

## IV.

### Appellant's Sixth Amendment Rights were Violated Because He Was Not Present at the Depositions of at Least Two and Possibly up to Four Witnesses.  The Violation Should Result in a Reversal of this Conviction.

An Appellant's right to be physically present at every stage of his trial has a longstanding tradition in this country's criminal jurisprudence, with origins in both the Due Process Clauses, *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987) ("[A] Defendant is guaranteed the right to be present at any stage

of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."), and the Confrontation Clause of the Sixth Amendment, *Illinois v. Allen*, 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."). *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008).

A vital aspect of the right of confrontation and cross-examination is safeguarding the integrity of the fact-finding process. *Stincer* at 736. As the *Gray* court pointed out:

> By "integrity," we do not merely mean the perception of a fair trial, but also the tactical assistance [the accused] could have offered his attorney while he questioned [the accuser] about her testimony. Although [the accused] had the opportunity to consult with his attorney after the court removed him from the courtroom and before the start of [the accuser's] cross-examination, [the accused] **was not present during the actual cross-examination and therefore could not assist his attorney in following-up to any answers** [the accuser] provided on cross-examination. [*Illinois v. Allen*, 397 U.S. 337, 344, (1970)] (noting that "one of the Appellant's primary advantages to being present at the trial [is] his ability to communicate with his counsel").
> *Gray* at 627. (Emphasis added).

Additionally, the *Gray* court powerfully explained, "the principles embodied in the Sixth Amendment are not meant to protect the rights of witnesses, but rather those of the accused, whose life and liberty lies in the hands of his peers." *Id.*

The right to confrontation is a right personal to an Appellant, and may not be satisfied by the Appellant's attorney being present at the deposition while the Appellant is absent due to illness, the Texas Court of Criminal Appeals has explained:

> Whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact. In *Maryland v. Craig*, the Supreme Court found sufficient assurance of reliability in a procedure that denied one of these elements-physical presence-*where the remaining three elements were unimpaired* (emphasis added). In that case, a child witness testified in front of a one-way closed-circuit monitor that prevented her from seeing the Appellant but permitted the judge, jury, and Appellant to see the witness. Because the witness was under oath, subject to contemporaneous cross-examination, and her demeanor was on display before the trier of fact, the Supreme Court found that the procedure adequately ensured that the testimony was "both reliable and subject to rigorous adversarial testing

44

in a manner functionally equivalent to that accorded live, in person testimony." *Romero v. State*, 173 S.W.3d 502, 505 (Tex.Crim.App.2005).

The Confrontation Clause of the United States Constitution guarantees to every person charged with a crime the right to be confronted by the witnesses against him. *Garcia v. State*, 151 Tex. Crim. 593, 598 (Tex. Crim. App. 1948). The Texas Court of Criminal Appeals has further expounded by stating that, "the constitutional provision that the accused shall be confronted with the witnesses against him means that the witnesses on the part of the state shall be personally present when the accused is on trial, or that they shall be examined in his presence and be subject to cross-examination by him." *Id.* (quoting *Kemper v. State*, 63 Tex. Crim. 1 (Tex. Crim. App. 1911). Furthermore, it is commonly agreed that the practice of confrontation has two purposes, with the foremost and crucial one being to secure the opportunity of cross-examination. *Id* at 600 (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934)).

Interestingly though, the Texas Code of Criminal Procedure carves out an exception to an accused's right to be confronted in the presence of a witness. The Code states that "a defendant's failure to attend a deposition or request a continuance in accordance with this subsection constitutes a waiver

of the defendant's right to be present at the deposition." TEX.CODE.CRIM.P. 39.025(g).

To be sure, the Sixth Amendment right of confrontation is "by its language and historical underpinnings, a personal right of the accused and is intended for his benefit." *United States v. Carlson*, 547 F.2d 1346, 1357 (8th Cir. 1976). Therefore, this right, in the same way as other federally assured constitutional rights, can be waived by the accused. *Id* at 1357-58. However, and importantly where Article 39.025 of the Texas code of Criminal Procedure is unconstitutional, to constitute a valid waiver there must be "an intentional relinquishment or abandonment of a known right or privilege" by the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Appellant concedes the depositions were lawfully applied for, ordered by the Court, and notice given to Counsel for the Defense (380-80745-2011 CR 41 – 43). The record is silent as to why Appellant had not attended. Perhaps his lawyer did not inform him of the dates. Perhaps the travel burden was too great for Defendant to attend, or perhaps the times and dates for the Deposition were unreasonable and done without meaningful conference.

TEX.R.CRIM.P. 39.025(g) cannot be harmonized with the U.S. Supreme Court's ruling in *Johnson*. Failure to attend a deposition with no explanation whatsoever on the record is not "an intentional relinquishment or abandonment of a known right or privilege." It may be an intentional relinquishment or then again it is just as likely an act of omission or negligence. Further, it impermissibly shifts the burden on a criminal defendant to participate in his own defense by potentially forcing him to travel hundreds of miles from where he or she may be charged if he or she wants to exercise their constitutional rights. It places the needs of the witness over the rights of the defendant. Because TEX.R.CRIM.P. 39.025(g) deems a waiver of defendant's right to confront without regard to whether the failure to attend the deposition was "an intentional relinquishment" the provision cannot be said to be anything other than unconstitutional under *Johnson*.

Finally, it should be noted one of the witnesses where Mr. Lawrence was not present was James Willis. Mr. Willis was the most damaging of all the investor witnesses.

The trial court abused its discretion by admitting the deposition testimony at trial after allowing the deposition to go forward in Mr. Lawrence's absence, violating his constitutional right to confront and cross-

examine the witness. We request, under Rule 44.2(a), a reversal of the trial court's judgment unless it is determined beyond a reasonable doubt that the error did not contribute to Mr. Lawrence's conviction or punishment.

## PRAYER

Based upon the foregoing arguments, Appellant prays for and requests that this Court reverse and enter a judgment of acquittal on the issues or in the alternative reverse and remand these proceedings to the trial Court. Appellant respectfully prays for any and all relief in law and equity to which he is justly entitled.

RESPECTFULLY SUBMITTED,

_____

Kenneth Paul Lawrence
404 Lee St.
Wolfe City, TX 75496
Phone: 972-768-3361
kennylawrence@Yahoo.com
*ProSe*

## CERTIFICATE OF SERVICE

This is to certify that this document was sent to Greg Willis, District Attorney, and Emily Johnson-LiuAssistant Criminal District Attorney, by and through their counsel of record on the date filed, pursuant to the Texas Rules of Criminal and Appellant Procedure

_____

Kenneth Lawrence

ProSe

Kenny Lawrence
1704 Turnberry
Allen TX 75002

Court of Criminal Appeals

PO Box 12308
Austin TX 78711

UNITED STATES
POSTAL SERVICE

U.S. POSTAGE
PAID
ALLEN, TX
75013
MAY 01, 15
AMOUNT
$2.17
0005471/7-03

78711

Rose-Breasted

